IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

"UNDER SEAL"

FILED
CHARLOTTE, NC
SEP 19 2018
US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| UNITED STATES of AMERICA, | DOCKET NO. 3:18cr 311-MOC |
| v. | BILL OF INDICTMENT |
| 1) ROGER ROGER,<br>2) PAUL ANDY STIEP,<br>3) MANUEL MAURO CHAVEZ,<br>4) DAVID MICHAEL NIGH,<br>5) MARK RAYMOND OMAN,<br>6) COLE ANTHONY PARKS, and<br>7) NICHOLAS RICHER,<br><br>Defendants. | Vio: 18 U.S.C. § 1349<br>18 U.S.C. § 1343<br>18 U.S.C. § 1956(h)<br>18 U.S.C. § 1956(a)(2)(A)<br>18 U.S.C. § 2326<br>18 U.S.C. § 982<br>18 U.S.C. § 2<br>28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES**:

At all times relevant to this Indictment:

### Background

1. "Sweepstakes schemes" are fraudulent schemes by which perpetrators of the scheme falsely tell victims that they have won a large cash prize but, in order to collect the prize, they must send a sum of money to the perpetrators of the scheme as a "fee," "duty," or for "taxes."

2. Sweepstakes schemes are often run from telemarketing call centers containing a group of telemarketers working together to perpetrate the fraud.

3. Perpetrators of sweepstakes schemes often take on one or more of the following roles:

1

(a) "Opener": the telemarketers who make the initial call to victims and inform them about the sweepstakes prize and the need to make a payment in order to collect the prize.

(b) "Loader": the telemarketers who re-solicit the same victim to send additional money.

(c) "Runner": the individuals who work for a call center by collecting victim funds and delivering them to, and for the benefit of, a call center.

## Defendants

4. Defendant ROGER ROGER (ROGER), a United States citizen, managed and worked in one or more call centers in Costa Rica engaged in a sweepstakes scheme directed, at least in part, at individuals residing in the United States.

5. Defendant PAUL ANDY STIEP (STIEP), a United States citizen, while residing in the United States, received and forwarded victim funds to, and for the benefit of, one or more call centers located in Costa Rica, which were defrauding, at least in part, individuals residing in the United States.

6. Defendant MANUEL MAURO CHAVEZ (CHAVEZ), a United States citizen, while residing in the United States, received and forwarded victim funds to, and for the benefit of, one or more call centers located in Costa Rica, which were defrauding, at least in part, individuals residing in the United States.

7. Defendant DAVID MICHAEL NIGH (NIGH), a United States citizen, worked as an opener and loader in one or more call centers in Costa Rica engaged in a sweepstakes scheme directed, at least in part, at individuals residing in the United States.

8. Defendant MARK RAYMOND OMAN (OMAN), a citizen of the United States, while residing in Costa Rica, worked for one or more call centers located in Costa Rica, which were defrauding, at least in part, individuals residing in the United States.

9. Defendant COLE ANTHONY PARKS (PARKS), a United States citizen, worked as an opener, loader, and runner in one or more call centers in Costa Rica engaged in a sweepstakes scheme directed, at least in part, at individuals residing in the United States.

10. Defendant NICHOLAS RICHER (RICHER), a United States citizen, while residing in the United States, received and forwarded victim funds to, and for the benefit of, one or more call centers located in Costa Rica, which were defrauding, at least in part, individuals residing in the United States.

## COUNT ONE
## (CONSPIRACY TO COMMIT WIRE AND MAIL FRAUD - 18 U.S.C. § 1349)

### Overview of the Fraudulent Scheme

11. Paragraphs 1 through 10 of this Indictment are incorporated by reference as if fully set forth herein.

12. Operating in several Costa Rican call centers, Defendants ROGER, NIGH, PARKS, OMAN, and other co-conspirators worked as "openers," "loaders," or "runners."

13. As openers, Defendants ROGER, NIGH, and PARKS would and did call an individual and falsely inform the individual that he/she had won a prize in a sweepstakes, and that in order to receive the prize, he/she had to send money to Costa Rica for a purported fee.

14. As loaders, Defendants ROGER, NIGH, and PARKS would and did contact the individual again, after he/she had made an initial payment and falsely inform the individual that the prize amount had increased because of either a clerical error or another

3

prize winner was disqualified, and, therefore, the individual must send additional money to pay for new purported fees, duties, and taxes to receive the now larger sweepstakes prize.

15. Defendants ROGER, NIGH, PARKS, and their co-conspirators would and did continue to call victims and insist that additional payments be made for new fees until an individual either ran out of money or discovered the fraudulent nature of the scheme.

16. As a runner, OMAN would and did receive victims' funds in Costa Rica and deliver them to, and for the benefit of, the call center.

17. In cases in which victims were unwilling to send funds outside the United States, Defendants ROGER, NIGH, and PARKS directed victims to send funds to Defendants STIEP, CHAVEZ, and RICHER, who were located within the United States.

18. Defendants STIEP, CHAVEZ, and RICHER would and did receive the victims' funds, retain a portion as their cut, and forward the remainder to, and for the benefit of, the illegal sweepstakes call center in Costa Rica.

The Conspiracy

19. Beginning in or about January of 2014 and continuing until in or about November of 2017, the exact dates being unknown to the Grand Jury, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, Defendants,

**ROGER ROGER,
PAUL ANDY STIEP,
MANUEL MAURO CHAVEZ,
DAVID MICHAEL NIGH,
MARK RAYMOND OMAN,
COLE ANTHONY PARKS,
and
NICHOLAS RICHER,**

4

knowingly combined, conspired, confederated, and agreed with each other and others, both known and unknown to the Grand Jury, to commit the following offenses:

(a) To knowingly and intentionally devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, placed and caused to be placed in a post office and authorized depository for mail matter, to be sent and delivered by the Postal Service and deposited and caused to be deposited matters and things to be delivered by private and commercial interstate carriers, specifically checks, money orders and currency, contrary to Title 18, United States Code, Section 1341; and

(b) To knowingly and intentionally devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire, radio and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, specifically, Western Union wire-transfers which were all routed through and processed in Western Union facilities in Charlotte, Mecklenburg County, North Carolina, for the purpose of executing such scheme and artifice and attempting to do so, contrary to Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

20. The purpose of the conspiracy was to enrich ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-conspirators by fraudulently inducing victims to pay thousands of dollars by falsely representing that the victims had won valuable prizes that would be sent to them only after they made payments to the co-conspirators.

## Manner and Means Used in the Conspiracy

21. Among the manner and means by which ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-conspirators carried out the purpose of the conspiracy were the following:

    (a) Beginning in or about January 2014 and continuing until in or about November 2017, the exact dates being unknown to the Grand Jury, ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-conspirators would and did operate and assist illegal telemarketing call centers in Costa Rica;

    (b) The call centers would and did frequently change the location of the call centers to avoid detection and investigation by law enforcement authorities;

    (c) ROGER, NIGH, OMAN, PARKS, and their co-conspirators would and did use aliases when contacting United States residents to solicit money from them;

    (d) ROGER, NIGH, OMAN, PARKS, and their co-conspirators would and did make false representations to United States residents, at least 10 of whom were over the age of 55, including that:

6

1. the victims had won $450,000 from a sweepstakes contest;

2. the victims were required to send funds to Costa Rica for fees related to the delivery of their prizes;

3. ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-conspirators were agents or representatives of a government agency, including the Internal Revenue Service; and

4. after receiving money from the victims, ROGER, NIGH, OMAN, PARKS, and their co-conspirators would and did re-contact individuals and falsely state that a mistake had occurred, and the individuals actually won a greater prize, often of $4,500,000 or more, requiring additional payments.

(e) ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-conspirators would and did call individuals using Voice over Internet Protocol (VOIP) technology, utilizing numbers with area codes associated with American cities to make it appear that the calls originated from within the United States rather than from Costa Rica;

(f) ROGER, NIGH, OMAN, PARKS, and their co-conspirators would and did provide victims with telephone numbers for prize verification, and those numbers were answered in the telemarketing call centers in Costa Rica through use of the VoIP technology;

(g) If victims called back to verify the sweepstakes, prize, or other false information they had been told, ROGER, NIGH, OMAN, PARKS, and their co-conspirators would and did provide false verifications.

(h) ROGER, NIGH, OMAN, PARKS, and their co-conspirators would and did direct victims to send the required funds through the following methods:

1. Western Union or MoneyGram;

2. by purchasing blank money orders, including Postal Money Orders, and sending them to identified parties and addresses located in both Costa Rica and the United States using FedEx and United States Parcel Service;

3. depositing funds directly into or wiring funds to identified bank accounts controlled by Defendants and their co-conspirators;

(i) STIEP, CHAVEZ, RICHER, and their co-conspirators would and did receive victim funds in the United States and transmitted victim funds to their co-conspirators in Costa Rica;

(j) OMAN, PARKS, and their co-conspirators would and did receive victim funds in Costa Rica for the benefit of the call center.

(k) ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-conspirators kept the funds received by victims, using it to pay the continued costs of operating the telemarketing call center, including payments for call center operations, and distributing the funds among Defendants and their co-conspirators for their personal benefit; and

(l) ROGER, STIEP, CHAVEZ, NIGH, OMAN, PARKS, RICHER, and their co-

8

conspirators caused United States residents to continue to send funds to them and their co-conspirators until those United States residents either ran out of money or realized that they were being defrauded.

All in violation of Title 18, United States Code, Sections 1349 and 2326(2)(A) & (B).

## COUNTS
## (WIRE FRAUD - 18 U.S.C. § 1343)

<u>The Scheme and Artifice to Defraud</u>

22. The allegations in paragraphs 1 through 10, 12 through 18, 20, and 21 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein as describing Defendants' scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

23. On or about the respective dates set forth below, each such date constituting a separate count of the Indictment, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, Defendants,

**ROGER ROGER,**
**PAUL ANDY STIEP,**
**MANUEL MAURO CHAVEZ,**
**DAVID MICHAEL NIGH,**
**MARK RAYMOND OMAN,**
**COLE ANTHONY PARKS,**
**and**
**NICHOLAS RICHER,**

acting in concert with others, having devised and intending to devise that scheme and artifice to defraud described above and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, knowingly

9

transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, specifically, Western Union wire-transfers, which were all electronically routed to and processed in Charlotte, Mecklenburg County, North Carolina, prior to being sent to their ultimate destination, for the purpose of executing the scheme and artifice and attempting to do so:

| Count | Sender's Initials | Wire Transfer Sent From | Wire Transfer Received In | Date | Amount |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
| 3 | MB | Apple Valley, CA | Costa Rica | 7/21/2015 | $487 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| 6 | PS | Miami, FL | Costa Rica | 8/23/2016 | $842 |
| 7 | WD | Miami, FL | Costa Rica | 8/24/2016 | $1,000 |
| 8 | WD | Miami, FL | Costa Rica | 8/28/2016 | $1,180 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

All in violation of Title 18, United States Code, Sections 1343, 2326(2)(A) & (B), and 2.

### COUNT ELEVEN
### (CONSPIRACY TO COMMIT MONEY LAUNDERING - 18 U.S.C. § 1956(h))

24. The allegations in paragraphs 1 through 10, 12 through 18, 20, and 21 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

25. In or about January of 2014 and continuing until in or about November of 2017, the exact dates being unknown to the Grand Jury, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, Defendants,

**ROGER ROGER,**
**PAUL ANDY STIEP,**

10

MANUEL MAURO CHAVEZ,
DAVID MICHAEL NIGH,
MARK RAYMOND OMAN,
COLE ANTHONY PARKS,
and
NICHOLAS RICHER,

did unlawfully and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS**
**(MONEY LAUNDERING – INTERNATIONAL - 18 U.S.C. § 1956(a)(2)(A))**

26. The allegations in paragraphs 1 through 10, 12 through 18, 20, and 21 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

27. On the respective dates set forth below, each such date constituting a separate count of this Indictment, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, Defendants,

ROGER ROGER,
PAUL ANDY STIEP,
MANUEL MAURO CHAVEZ,
DAVID MICHAEL NIGH,
MARK RAYMOND OMAN,
COLE ANTHONY PARKS,
and
NICHOLAS RICHER,

together with others known and unknown to the Grand Jury, did knowingly transport,

transmit and transfer and cause to be transported, transmitted, and transferred, monetary instruments and funds from a place in the United States to and through a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity, namely wire fraud:

| Count | Sender's Initials | Wire Transfer Sent From | Wire Transfer Received In | Date | Amount |
|---|---|---|---|---|---|
| | | | | | |
| 13 | MB | Apple Valley, CA | Costa Rica | 7/17/2015 | $450 |
| | | | | | |
| | | | | | |
| 16 | PS | Miami, FL | Costa Rica | 8/27/2016 | $1,185 |

All in violation of Title 18, United States Code, Section 1956(a)(2)(A), and 2.

Case 3:18-cr-00311-MOC-DCK Document 58 Filed 09/19/24 Page 12 of 14

## **NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE**

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to all specified unlawful activities listed or referenced to in 18 U.S.C. §1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

(a) All property which constitutes or is derived from gross proceeds of the violations set forth in this Bill of Indictment;

(b) All property used or intended to be used to commit, to facilitate, or to promote the violations;

(c) All property involved in such violations or traceable to property involved in such violations; and

(d) If, as set forth in 21 U.S.C. § 853(p), any property described in (a), (b), or (c) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property, which cannot be divided without difficulty, all other property of the Defendant's to the extent of the value of the property described in (a), (b), and (c).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above.

Case 3:18-cr-00311-MOC-DCK Document 58 Filed 09/19/24 Page 13 of 14

A TRUE BILL

███████████████████

GRAND JURY FOREPERSON

R. ANDREW MURRAY
ACTING UNITED STATES ATTORNEY

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

_____
WILLIAM H. BOWNE
JENNIFER L. FARER
TRIAL ATTORNEYS
FRAUD SECTION, CRIMINAL DIVISION